## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| RUBY HAS, LLC | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.: 3:20-cv-000847 |
| vs. | ) | Judge BEATON |
| | ) | |
| eJOOV, INC., ERIC WILLIAMS, TIM | ) | |
| BROWN, MICHAEL LEWIS and | ) | |
| STEPHANIE FLISCHEL | ) | |
| | ) | |
| Defendants | ) | |

### ANSWER ON BEHALF OF DEFENDANT eJOOV, INC.

Defendant, eJOOV, Inc., by counsel, for its Answer to Plaintiff's Complaint (DN 1), states as follows:

Defendant has copied the captions utilized by Plaintiff in its Complaint in structuring Defendant's Answer, but Defendant does not adopt the truth, accuracy or validity of any characterizations or representations contained within Plaintiff's captions.

### FIRST DEFENSE

### NATURE OF THE ACTION

1.      This is an action by Ruby Has against eJOOV and the Individual Defendants for the willful and malicious misappropriation of trade secrets to recover damages in excess of$10,000,00.00 for the Individual Defendants' breach of certain representations and warranties relating to the Assignment and Assumption and Commission Agreement, dated March 19, 2020(the "Agreement"), between Plaintiff and Simpler Postage, Inc. d/b/a EasyPost ("EasyPost") and other duties and confidentiality obligations owed to Ruby Has by the Individual Defendants.

ANSWER:    Defendant denies the allegations contained in Paragraph 1 of the Complaint.

2.      As a result of their violations of the terms of the Agreement and related confidentiality agreements, including the willful and malicious misappropriation of Ruby Has' trade secrets, eJOOV and the Individual Defendants have caused Ruby Has to lose customers and market share, the value of its acquisition of certain assets of EasyPost and suffer various other additional forms of irreparable harm.

ANSWER:      Defendant denies the allegations contained in Paragraph 2 of the Complaint.

## PARTIES, JURISDICTION, AND VENUE

3.      Ruby Has is a New York limited liability company with its principal place of business located in New York.

ANSWER:      Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 3 of the Complaint.

4.      eJOOV is a Kentucky Corporation with its principal place of business located in Louisville, Kentucky.

ANSWER:      Defendant admits the allegations contained within Paragraph 4 of the Complaint.

5.      Upon information and belief, Defendant Eric Williams is an individual residing in Louisville, Kentucky.

ANSWER:      Defendant admits the allegations contained within Paragraph 5 of the Complaint.

6.      Upon information and belief, Defendant Timothy Brown is an individual residing in Louisville, Kentucky.

ANSWER:      Defendant admits the allegations contained within Paragraph 6 of the Complaint.

7.      Upon information and belief, Defendant Michael Lewis is an individual residing in Louisville, Kentucky.

ANSWER:    Defendant denies the allegations contained within Paragraph 7 of the Complaint.

8.      Upon information and belief, Defendant Stephanie Flischel is an individual residing in Shepherdsville, Kentucky.

ANSWER:    Defendant admits the allegations contained within Paragraph 8 of the Complaint.

9.      This Court has personal jurisdiction over eJOOV and the Individual Defendants because they conduct business and reside within Kentucky.

ANSWER:    With regard to Paragraph 9 of the Complaint, Defendant admits that this court has personal jurisdiction over eJOOV and Individual Defendants Eric Williams, Timothy Brown and Stephanie Flischel because they reside in Kentucky. Defendant denies that Individual Defendant Michael Lewis resides in Kentucky, but admits that he is employed in Kentucky.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Ruby Has' claims arise under the laws of the United States (Defend Trade Secrets Act, 18 U.S.C.§ 1832 et seq.). This Court has supplemental jurisdiction arising over the pendent state law claims asserted herein pursuant to 28 U.S.C. § 1367 because such claims are so related to Plaintiff's federal misappropriation of trade secrets claim and other wrongful acts that they form part of the same case or controversy under Article III of the United State Constitution.

ANSWER:    Defendant denies the allegations contained in Paragraph 10 of the Complaint.

11.     Venue in the Western District of Kentucky is proper pursuant to 28 U.S.C. § 1391 because the claims alleged herein arose in this district and Defendants have sufficient contacts with this district such that they are subject to personal jurisdiction in this district.

ANSWER:    Defendant admits the allegations contained in Paragraph 11 of the Complaint.

**RELEVANT FACTS**

3

12.    Ruby Has is a fulfillment specialist and third-party logistics provider ("3PL"), which serves medium and enterprise-level businesses with automation technology, API integration, pick and pack, and national fulfillment warehouse solutions.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 12 of the Complaint.

13.    Ruby Has provides its customers and delivers a tech-savvy enterprise fulfillment experience with a personal touch. Ruby Has is based in New York and has expanded with locations in New Jersey, Nevada, California, Kentucky and Toronto to amplify fast, competitive shipping speeds. Ruby Has offers same day shipping from its ecommerce fulfillment warehouses with exact precision and strives to always be on the cutting-edge of technology and systems to help its customers' businesses grow and thrive.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 13 of the Complaint.

14.    EasyPost was a shipping and logistics company that assists its customers in fulfilling their ecommerce sales.[1] When purchases were made online, EasyPost coordinated the quickest and most efficient way for the particular goods to be shipped.

ANSWER:    Defendant admits the allegations contained in Paragraph 14 of the Complaint.

15.    As part of EasyPost's logistics operations, the company had several warehouses around the U.S. to store its customers' inventory so that nearby consumers could be tendered items in a shorter time frame and the most cost-efficient manner.

ANSWER:    Defendant admits the allegations contained in Paragraph 15 of the Complaint.

---

[1] See https://www.easypost.com/fulfillment.

16.     EasyPost had one of its largest warehouses in Louisville, Kentucky, which stored most of its clients' inventory, and was used to fulfill its clients' purchase orders in the surrounding region.

ANSWER:    Defendant admits the allegations contained in Paragraph 16 of the Complaint.

17.     On March 13, 2020, EasyPost, on behalf of itself and its officers and employees at the time, executed a Non-Disclosure Agreement (the "NDA") with Ruby Has for the purpose of discussing an opportunity for Ruby Has to acquire certain assets of EasyPost, wherein EasyPost and Ruby Has agreed not to disclose certain confidential technical and business information obtained in the course of the potential EasyPost sale for a period of two (2) years.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 17 of the Complaint.

18.     The NDA encompassed, inter alia, all sensitive and proprietary business information that EasyPost sold to Ruby Has for exclusive use, and further prohibited EasyPost, including its officers and employees at the time, from using any confidential information except to evaluate and engage in discussions concerning the relationship between EasyPost and Ruby Has.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 18 of the Complaint.

19.     Following the execution of the NDA, and further evaluation of EasyPost's business and operations, on March 19, 2020, Ruby Has entered into an Assignment and Assumption and Commission Agreement (the "Agreement") with EasyPost whereby Ruby Has was granted exclusive access and assigned all of EasyPost's contractual rights to its fulfillment customer contracts, and customer database at all of EasyPost's warehouse facilities.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 19 of the Complaint.

20.    The Agreement contained a confidentiality clause which provided that the provisions of the NDA by and between the Parties controlled the disclosure of all information under the Agreement wherein the NDA – and the Agreement by applying the NDA – prohibited the use of any Confidential Information (as that term was defined in the NDA) by the Discloser (a defined term) from disclosure to third parties or to Representatives (a defined term) of the Recipient (a defined term).

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 20 of the Complaint.

21.    Pursuant to the Agreement, Ruby Has acquired the Kentucky warehouse with the intent of taking over the business from EasyPost, including its customer list, certain customer contracts, and market dominance in the region.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 21 of the Complaint.

22.    EasyPost agreed to use all commercially reasonable efforts to promote and transition its customers from using EasyPost's fulfillment services and platform exclusively to the Ruby Has platform. In exchange, the Agreement contemplated commission payments to be made to EasyPost in relation to any EasyPost customers successfully transitioned.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 22 of the Complaint.

23.    Also, as further consideration for acquiring the business, Ruby Has assumed certain of EasyPost's obligations and liabilities in the Kentucky warehouse. Upon actual possession of the facility, Ruby Has assumed responsibility for employee matters, costs, and expenses, relating to the employees listed on Schedule 3 of the Agreement (the "Kentucky Personnel").

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 23 of the Complaint.

24.    The Individual Defendants, Williams, Brown, Lewis, and Flischel, were employees of EasyPost at the time of the Agreement, and the Agreement specifically identified Williams and his team as Kentucky Personnel.

ANSWER:    Defendant admits that Individual Defendants were employed by Easy Post at the time Easy Post announced a deal had been reached between Easy Post and Ruby Has, LLC. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations contained within Paragraph 24 of the Complaint.

25.    Williams was EasyPost's Senior Vice President of Warehouse at the time the Parties entered into the Agreement and was a senior member of the EasyPost deal team working on the acquisition of EasyPost by Ruby Has.

ANSWER:    Defendant admits that Eric Williams as Senior Vice President of Warehouse for Easy Post at the time Easy Post announced a deal had been reached between Easy Post and Ruby Has, LLC.  Defendant denies the remaining allegations contained in Paragraph 25 of the Complaint.

26.    Brown was Director of Warehouse Systems.

ANSWER:    Defendant admits the allegations contained in Paragraph 26 of the Complaint.

27.    Lewis was Head of Warehouse Continuous Improvement.

ANSWER:    Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28.    Flischel was Project Manager.

ANSWER:    Defendant admits the allegations contained in Paragraph 28 of the Complaint.

29.    The Individual Defendants, through their affiliation with EasyPost, are parties to the Agreement.

ANSWER:    Defendant denies the allegations contained in Paragraph 29 of the Complaint.

30.    As set forth in the Agreement, EasyPost, whose team was led in part by Williams, made certain representations and warranties to Ruby Has, as of the Effective Date, including, without limitation, the following:

11.    Non-Solicitation.  Each party agrees that, during the Term of this Agreement and continuing for a period of one (1) year thereafter, it shall not interfere with the other party's relationship with, or endeavor to entice away from such party, any person who at any point during the Term of this Agreement was an employee, customer, or consultant of the other party, or otherwise had a material business relationship with the other party. Notwithstanding the foregoing and for the avoidance of doubt, all Customers contained in the EasyPost database assigned to Ruby Has pursuant to the terms of this Agreement, shall be deemed customers solely of Ruby Has and shall, from the time of the Effective Date, not be considered Customers of EasyPost for any reason.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 30 of the Complaint.

31.    As a senior officer of the company and deal team member, Williams represented to Ruby Has, and its principals, that EasyPost, through the Agreement, was exiting the fulfillment and 3PL business overall, and from the Kentucky territory in particular, and would not be in competition with Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 31 of the Complaint.

32.    Williams also represented to Ruby Has, and its principals, that (i) EasyPost was selling and assigning its customer contracts and relationships; and (ii) EasyPost would no longer remain as an operating entity seeking to conduct business with the specific customers and relationships that Ruby Has was acquiring through the Agreement, nor would it target the same industry for the purpose of selling fulfillment and 3PL services and all services described above in the future.

ANSWER:    Defendant denies the allegations contained in Paragraph 32 of the Complaint.

33.    These representations were material to Ruby Has in its decision to enter into the Agreement.

ANSWER:    The allegations contained in Paragraph 33 of the Complaint are legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations.

34.    Based on information and belief, at the time Williams made the representations, he knew they were false, based on Williams' own plans to open a competing business against Ruby Has using the EasyPost customer database, customer and pricing information and other EasyPost trade secrets and employees.

ANSWER:    Defendant denies the allegations contained in Paragraph 34 of the Complaint.

35.    Williams made these representations intending to induce Ruby Has to rely on them in making the decision to enter into and pursue the Agreement.

ANSWER:    Defendant denies the allegations contained in Paragraph 35 of the Complaint.

36.    Ruby Has in fact relied on the material representations of the Individual Defendants, and the expertise and specialized knowledge of Brown, Lewis, and Flischel when deciding to enter into the Agreement and to assume certain liabilities for the Kentucky warehouse and the Kentucky Personnel.

ANSWER:    Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37.    Ruby Has further relied on Williams and Browns' impartiality as EasyPost participants with no other hidden future interests or agendas in mind when Ruby Has engaged in negotiations and entered into the Agreement with EasyPost.

ANSWER:    Defendant denies the allegations contained in Paragraph 37 of the Complaint.

38.    On April 1, 2020, as part of the Agreement, Brown and Lewis were hired by Ruby Has as independent contractors. Brown was compensated by Ruby Has by payments made on May 5 and June 1, 2020. Lewis was compensated by Ruby Has by payments made on April 30and June 9, 2020. Brown and Lewis owed a duty of loyalty to Ruby Has because of their independent contractor relationships.

ANSWER:    Defendant admits the allegations contained in the first three sentences of Paragraph 38 of the Complaint.  The remaining allegations contained in Paragraph 38 of the Complaint are legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations.

39.    In April 2020, as part of the Agreement between EasyPost, as led in part by Williams, and Ruby Has, Brown handled EasyPost's closure and transition of its warehouses from California, Pennsylvania, and Utah to Kentucky. Williams and Brown had access to all customer accounts and information, including but not limited to, prior revenue, item information, and sales that was acquired by Ruby Has.

ANSWER:    Defendant admits that Individual Defendant Brown assisted in the closure and transition of Easy Post's warehouses from California, Pennsylvania and Utah to Kentucky. Defendant denies the remaining allegations contained in Paragraph 39 of the Complaint.

40.    Also, as part of the Agreement, Lewis was charged by Ruby Has with overseeing special projects and sales. Lewis had access to all customer accounts and information, including but not limited to, prior revenue, item information, and sales that was acquired by Ruby Has.

10

ANSWER:   Defendant denies the allegations contained in Paragraph 40 of the Complaint.

41.   Also, as part of the Agreement, on April 1, 2020, Flischel was hired by Ruby Has as a Customer Success Manager. Flischel had access to all customer accounts and information, including but not limited to, prior revenue, item information, and sales.

ANSWER:   Defendant admits that Individual Defendant Flischel was hired by Ruby Has as a Customer Success Manager beginning April 1, 2020.   Defendant denies the remaining allegations contained in Paragraph 41 of the Complaint.

42.   In addition to the Agreement, Flischel signed a Confidentiality Agreement with Ruby Has, covenanting to abide by the provisions therein ("Flischel Confidentiality Agreement").

ANSWER:   Defendant admits that Individual Defendant Flischel executed an agreement with Ruby Has, LLC on or about April 1, 2020.

43.   Pursuant to the Flischel Confidentiality Agreement, she expressly agreed to, among other things: (i) "hold the Confidential Information received from Ruby Has LLC in strict confidence;" (ii) "not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by Ruby Has LLC management;" and (iii) "not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of his/her duties for Ruby Has LLC."

ANSWER:   The allegations contained in Paragraph 42 of the Complaint characterize a legal communication, which speaks for itself.   All allegations contained in Paragraph 43 which are inconsistent with that legal communication are denied.

44.   Unlike the other Individual Defendants, Williams was not offered a position at Ruby Has.

ANSWER:    Defendant admits the allegations contained in Paragraph 44 of the Complaint.

45.    Based on the parties' discussions and negotiations, as well as Williams' representations, it was understood that Williams would not set up a competitive replica company to EasyPost in Kentucky right near the old EasyPost (now Ruby Has) facility, providing the same services, with the same people, in the same geography, targeting the same customers, and using the exact same highly-specific pricing and business model as EasyPost did, relying on proprietary information now owned by Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 45 of the Complaint.

46.    In or around April or May 2020, Williams, after obtaining and misappropriating confidential information and trade secrets from Ruby Has through his position at EasyPost, created eJOOV, a company that would compete directly with Ruby Has and mirror the business of EasyPost in many respects.

ANSWER:    Defendant admits that Individual Williams was a founding member of Defendant.  Defendant denies the remaining allegations in Paragraph 46 of the Complaint.

47.    Williams formed eJOOV with other former employees, officers, and consultants of EasyPost working for Ruby Has following the acquisition, including the Individual Defendants.

ANSWER:    Defendant denies the allegations contained in Paragraph 47 of the Complaint.

48.    eJOOV is a fulfillment specialist and 3PL provider that directly competes with Ruby Has.[2] eJOOV strategically operates in Louisville, Kentucky so that eJOOV and the Individual Defendants can capitalize on and take advantage of their specialized knowledge of Ruby

---

[2] See https://www.ejoov.com/services.

Has' operations, customers, pricing, and goodwill that EasyPost developed in this and neighboring regions, and that Ruby Has acquired.

ANSWER:    Defendant admits it is a fulfillment specialist and 3PL provider.  Defendant denies the remaining allegations contained in Paragraph 48 of the Complaint.

49.    Unbeknownst to Ruby Has, the Individual Defendants, at the leadership of Williams and based upon knowledge he garnered under the NDA with Ruby Has as SVP of Warehousing at EasyPost, made clandestine plans to acquire trade secrets and other confidential information, including but not limited to, customer pricing schemes, customer lists, prior revenue, item information, and sales before entering into direct competition with Ruby Has by forming and joining eJOOV.

ANSWER:    Defendant denies the allegations contained in Paragraph 49 of the Complaint.

50.    These trade secrets are not generally known to and are not readily ascertainable through proper means by the competitors of Ruby Has or other persons who can obtain economic value from its disclosure or use, nor are they in any way deducible from public information.

ANSWER:    Defendant denies the allegations contained in Paragraph 50 of the Complaint.

51.    Ruby Has also took and continues to take reasonable efforts to maintain the secrecy of this confidential information, including but not limited to: putting in place non-disclosure agreements with companies that cover their employees (e.g., between EasyPost and Williams) as well as with its own employees (e.g., between Ruby Has and Flischel), limiting the disclosure and use of these trade secrets to those who have specific specialties and experience, restricting access to this information by limiting access to computer networks containing this information to those employees with specific specialties and experiences, requiring the use of passwords to access the information, engaging in post-employment efforts to ensure its trade secrets are maintained by

departing employees and consultants and not shared with competitors, and monitoring employee email, data transfers and computer logins and use. Ruby Has' trade secrets are not available to the public, are not shared with the public, and are competitively valuable to competitors of Ruby Has and impossible to deduce from any publicly available information.

ANSWER:   Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 51 of the Complaint.

52.    On May 11, 2020, Lewis gave notice that he would no longer serve as a consultant to Ruby Has pursuant to the Agreement.

ANSWER:   Defendant admits that Lewis gave notice of termination of his Independent Contractor Agreement with Ruby Has on May 11, 2020.   Defendant denies the remaining allegations contained in Paragraph 52 of the Complaint.

53.    On May 20, 2020, Flischel gave notice of her resignation from Ruby Has.

ANSWER:   Defendant admits the allegations contained in Paragraph 53 of the Complaint.

54.    On May 21, 2020, Brown gave notice that he would no longer serve as a consultant to Ruby Has pursuant to the Agreement.

ANSWER:   Defendant admits the allegations contained in Paragraph 54 of the Complaint.

55.    After the coordinated departure of the Individual Defendants, Brown, Lewis, and Flischel immediately began employment at eJOOV, which opened its own operations directly across the street from Ruby Has' warehouse in Kentucky that it acquired from EasyPost, at the leadership of Williams.

ANSWER:   Defendant admits that Individual Defendants Brown, Lewis and Flischel began working for eJOOV's facility that is across the street from Ruby Has' Kentucky warehouse. Defendant denies the remaining allegations contained in Paragraph 55 of the Complaint.

14

56.     Ruby Has conducted an investigation into the conduct of the Individual Defendants during their tenure with Ruby Has, reviewing their email correspondence, and other business dealings.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 56 of the Complaint.

57.     After conducting its investigation and inspection, Ruby Has uncovered evidence that the Individual Defendants misappropriated trade secrets that they obtained during their time with Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 57 of the Complaint.

58.     In fact, Ruby Has uncovered clear evidence that the Individual Defendants misappropriated numerous trade secrets, including but not limited to, the identity of all Ruby Has clients, the potential profit margin of each client, the names and contact information of direct client contacts acquired by Ruby Has, Ruby Has' pricing considerations for each client based on their individual experiences and needs communicated only to Ruby Has, the financial and operational weakness of each client based on extensive experience and knowledge acquired solely by Ruby Has, the exact pricing model that Ruby Has acquired from EasyPost in connection with the Agreement, and the names of all Ruby Has employees.

ANSWER:    Defendant denies the allegations contained in Paragraph 58 of the Complaint.

59.     The Individual Defendants knew or had reason to know that Ruby Has' trade secrets were acquired by improper means.

ANSWER:    Defendant denies the allegations contained in Paragraph 59 of the Complaint.

60.    The Individual Defendants disclosed and used Ruby Has' trade secrets without express or implied consent using improper means to acquire knowledge of the trade secrets.

ANSWER:    Defendant denies the allegations contained in Paragraph 60 of the Complaint.

61.    Ruby Has' trade secrets afford eJOOV and the Individual Defendants significant competitive advantage in the form of an extensive customer list, customer data, customer preferences, and unique pricing schemes that eJOOV and the Individual Defendants would have otherwise had to develop from scratch.

ANSWER:    Defendant denies the allegations contained in Paragraph 61 of the Complaint.

62.    Specifically, at this time, several customers have left or are in the process of leaving Ruby Has for eJOOV, as a result of eJOOV's wrongful conduct, representing a significant and continuing loss of revenue and profits for Ruby Has.

ANSWER:    Defendant admits that customers have left Ruby Has, including some that have ultimately selected eJOOV.  Defendant denies the remaining allegations contained in Paragraph 62 of the Complaint.

63.    In addition, in circumvention of the Agreement and the NDA, eJOOV and the Individual Defendants continue to solicit Ruby Has' employees in order to gain an unfair competitive advantage over Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 63 of the Complaint.

## FIRST CLAIM

**(Misappropriation of Trade Secrets under the Defend Trade Secrets Act against eJOOV and the Individual Defendants)**

64.     Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 63 with the same force and effect as if fully set forth herein.

ANSWER:     Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

65.     Over the course of 9 years, prior to and since the purchase of certain of the assets of EasyPost, specifically including all of EasyPost's fulfillment and 3PL business, inclusive of EasyPost's market share of its fulfillment and 3PL business in various locations, Ruby Has invested and continues to invest considerable amounts of time and money acquiring, creating and developing confidential and trade secret information, including, but not limited to, their proprietary lists of key customer and client contacts, pricing models, data, and specific strategic plans for these customers and clients.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 65 of the Complaint.

66.      Once Ruby Has acquired EasyPost's fulfillment ad 3PL business, EasyPost's trade secrets, including, but not limited to, its proprietary lists of key customers and client contracts and pricing data that it had cultivated over the years, became the property of Ruby Has, and thus were subjected to the same protections as the trade secrets and business information of Ruby Has.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 66 of the Complaint.

67.     Ruby Has' trade secrets give it an actual or potential advantage over their competitors, and unauthorized use or disclosure of those trade secrets would deprive Ruby Has of economic advantage.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 67 of the Complaint.

68.    Ruby Has took and continues to take extensive measures to safeguard the secrecy of their confidential and trade secret information by, among other things, requiring employees, including Flischel, to sign a Confidentiality and Non-Disclosure Agreement, password protecting their computer systems and monitoring email, data transfers and computer logins and use.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 68 of the Complaint.

69.    Prior to terminating their employment, Brown, Lewis, and Flischel enjoyed a position of trust and confidence at Ruby Has and were privy to such confidential and trade secret information, including contact details for clients, pricing models and pricing considerations, all of which is the sole and exclusive property of Ruby Has.

ANSWER:    Defendant denies the allegations contained in paragraph 69 of the Complaint.

70.    Prior to terminating his employment at EasyPost, Williams was a Senior Officer bound by the NDA with Ruby Has. He used the information disclosed while that NDA was in force and effect to strategize and implement the formation of eJOOV and to plan the solicitation of employees and customers Ruby Has received as part of the acquisition.

ANSWER:    Defendant denies the allegations contained in paragraph 70 of the Complaint.

71.    Upon information and belief, eJOOV, through the actions of Williams, Brown, Lewis, and Flischel, has improperly accessed, copied, removed, used and otherwise misappropriated and continues to misappropriate Ruby Has' confidential, proprietary and trade secret information without Ruby Has' express or implied consent, including its proprietary customer and client contacts, pricing, data, and specific strategic plans for these customers and

clients with the knowledge and encouragement of Williams.

ANSWER:    Defendant denies the allegations contained in Paragraph 71 of the Complaint.

72.    As a result of Defendants' misconduct alleged herein, Ruby Has lost the ability to successfully transfer clients for which it paid under the Agreement as well as the value of its trade secrets, market share and confidential information that it cultivated.

ANSWER:    Defendant denies the allegations contained in Paragraph 72 of the Complaint.

73.    eJOOV's misappropriation of Ruby Has' confidential, proprietary and trade secret information was willful and malicious.

ANSWER:    Defendant denies the allegations contained in Paragraph 73 of the Complaint.

74.    eJOOV and the Individual Defendants knew or had reason to know that Ruby Has' trade secrets were acquired by improper means.

ANSWER:    Defendant denies the allegations contained in Paragraph 74 of the Complaint.

75.    eJOOV's conduct constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. and the common law protections afforded to trade secret information.

ANSWER:    Defendant denies the allegations contained in Paragraph 75 of the Complaint.

76.    The trade secret misappropriation of eJOOV, Williams, Brown, Lewis, and Flischel caused and continues to cause Ruby Has substantial and immediate irreparable injury, including the actual and potential loss of client relationships, market share and goodwill, as well as confidential, proprietary and trade secret information. Unless enjoined, eJOOV, Williams, Brown,

Lewis, and Flischel will continue to breach their legal obligations and cause further injury to Ruby Has. Because Ruby Has was, and will continue to be, injured in their efforts to sell their products and services, they are entitled to injunctive relief and the recovery of compensatory damages, punitive damages, special damages and attorneys' fees.

ANSWER: Defendant denies the allegations contained in Paragraph 76 of the Complaint.

## SECOND CLAIM
**(Misappropriation of Trade Secrets under the Kentucky Uniform Trade Secrets Act against eJOOV and the Individual Defendants)**

77.     Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 76 with the same force and effect as if fully set forth herein.

ANSWER:     Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

78.     Over the course of 9 years, prior to and since the purchase of EasyPost, Ruby Has invested and continues to invest considerable amounts of time and money acquiring, creating and developing confidential and trade secret information, including, but not limited to, their proprietary lists of key customer and client contacts, pricing, data, and specific strategic plans for these customers and clients.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 78 of the Complaint.

79.     Once Ruby Has acquired EasyPost's fulfillment and 3PL business, EasyPost's trade secrets that it had cultivated over the years became the property of Ruby Has, and thus were subjected to the same protections as the trade secrets and business information of Ruby Has.

ANSWER:     Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 79 of the Complaint.

80.    Ruby Has' trade secrets give it an actual or potential advantage over their competitors, and unauthorized use or disclosure of those trade secrets would deprive Ruby Has of that advantage.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 80 of the Complaint.

81.    Ruby Has took and continues to take extensive measures to safeguard the secrecy of their confidential and trade secret information by, among other things, requiring employees, including Flischel, to sign a Confidentiality and Non-Disclosure Agreement, password protecting their computer systems and monitoring email, data transfers and computer logins and use.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 81 of the Complaint.

82.    Prior to terminating their employment, Brown, Lewis, and Flischel enjoyed a position of trust and confidence at Ruby Has and were privy to such confidential and trade secret information, which is the sole and exclusive property of Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 82 of the Complaint.

83.    Upon information and belief, eJOOV, through the actions of Williams, Brown, Lewis, and Flischel, improperly accessed, copied, removed, used and otherwise misappropriated and continues to misappropriate Ruby Has' confidential, proprietary and trade secret information without Ruby Has' express or implied consent, including its proprietary customer and client contacts, pricing, data, and specific strategic plans for these customers and clients.

ANSWER:    Defendant denies the allegations contained in Paragraph 83 of the Complaint.

84.    As a result of Defendants' misconduct alleged herein, Ruby Has lost the ability to successfully transfer clients for which it paid under the Agreement as well as the value of its trade secrets, market share and confidential information that it cultivated.

ANSWER:    Defendant denies the allegations contained in Paragraph 84 of the Complaint.

85.    eJOOV's misappropriation of Ruby Has' confidential, proprietary and trade secret information was willful and malicious.

ANSWER:    Defendant denies the allegations contained in Paragraph 85 of the Complaint.

86.    eJOOV's conduct constitutes a violation of the Kentucky Uniform Trade Secrets Action, KRS 365.880 et seq. and the common law protections afforded to trade secret information.

ANSWER:    Defendant denies the allegations contained in Paragraph 86 of the Complaint.

87.    The trade secret misappropriation of eJOOV, Williams, Brown, Lewis, and Flischel caused and continues to cause Ruby Has substantial and immediate irreparable injury, including the actual and potential loss of client relationships, market share and goodwill, as well as confidential, proprietary and trade secret information. Unless enjoined, eJOOV, Williams, Brown, Lewis, and Flischel will continue to breach their legal obligations and cause further injury to Ruby Has. Because Ruby Has was, and will continue to be, injured in their efforts to sell their products and services, they are entitled to injunctive relief and the recovery of compensatory damages, punitive damages, special damages and attorneys' fees.

ANSWER:    Defendant denies the allegations contained in Paragraph 87 of the Complaint.

## **THIRD CLAIM**
### **(Willful and Malicious Appropriation under the Kentucky Uniform Trade Secret Act against eJOOV and the Individual Defendants)**

88.     Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 87 with the same force and effect as if fully set forth herein.

ANSWER:     Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

89.     Upon information and belief, eJOOV and the Individual Defendants knew or had reason to know that the trade secrets were acquired by improper means.

ANSWER:     Defendant denies the allegations contained in Paragraph 89 of the Complaint.

90.     eJOOV and the Individual Defendants willfully and maliciously misappropriated Ruby Has' trade secrets.

ANSWER:     Defendant denies the allegations contained in Paragraph 90 of the Complaint.

91.     eJOOV's conduct constitutes a violation of the Kentucky Uniform Trade Secrets Action, KRS 365.880 et seq. and the common law protections afforded to trade secret information.

ANSWER:     Defendant denies the allegations contained in Paragraph 91 of the Complaint.

92.     The willful and malicious trade secret misappropriation of eJOOV, Williams, Brown, Lewis, and Flischel caused and continues to cause Ruby Has substantial and immediate irreparable injury, including the actual and potential loss of client relationships and goodwill, as well as confidential, proprietary and trade secret information. Unless enjoined, eJOOV, Williams, Brown, Lewis, and Flischel will continue to breach their legal obligations and cause further injury to Ruby Has. Because Ruby Has was, and will continue to be, injured in their efforts to sell their products and services, they are entitled to injunctive relief and the recovery of compensatory

damages, punitive damages, special damages and attorneys' fees.

ANSWER:    Defendant denies the allegations contained in Paragraph 92 of the Complaint.

## FOURTH CLAIM
### (Breach of Contract against Flischel)

93.    Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 92 with the same force and effect as if fully set forth herein.

ANSWER:    Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

94.    The Flischel Confidentiality Agreement is a valid and enforceable contract between Ruby Has and Flischel.

ANSWER:    The allegations contained in Paragraph 94 of the Complaint are legal conclusions to which no answer is required.  To the extent an answer is required, Defendant denies the allegations.

95.    Ruby Has performed under the Flischel Confidentiality Agreement.

ANSWER:    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations contained within Paragraph 95 of the Complaint.

96.    Flischel breached the Flischel Confidentiality Agreement by forming and commencing employment with eJOOV, a direct competitor of Ruby Has, using Ruby Has' confidential and competitively sensitive information, and interfering with Ruby Has' relationships with its customers.

ANSWER:    Defendant denies the allegations contained in Paragraph 96 of the Complaint.

97.    By taking these actions, Flischel has breached and will continue to breach contractual and legal obligations pursuant to the Flischel Confidentiality Agreement, its applicable provisions, and common law.

ANSWER:    Defendant denies the allegations contained in Paragraph 97 of the Complaint.

98.    Flischel's breaches of contract have caused Ruby Has damages to its goodwill, reputation, and legitimate business interests, in an amount to be determined at trial.

ANSWER:    Defendant denies the allegations contained in Paragraph 98 of the Complaint.

## FIFTH CLAIM
### (Fraud against Williams)

99.    Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 95 [sic] with the same force and effect as if fully set forth herein.

ANSWER:    Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

100.    Defendant Williams was a Senior Vice President at EasyPost and part of the EasyPost deal team that worked on Ruby Has' acquisition.

ANSWER:    Defendant admits that Williams was a Senior Vice President at Easy Post, but denies the remaining allegations contained in Paragraph 100 of the Complaint.

101.    As a senior officer of the company and part of that deal team, Williams was subject to the NDA, wherein both parties agreed not to disclose certain confidential technical and business formation obtained in the course of the potential EasyPost sale for a period of two (2) years.

ANSWER:    Defendant denies the allegations contained in Paragraph 101 of the Complaint.

102.    The NDA encompassed, inter alia, all sensitive and proprietary business information that EasyPost sold and/or assigned and/or transferred to Ruby Has for exclusive use, and further prohibited EasyPost, including Williams and its other officers and employees at the time, from using any confidential information except to evaluate and engage in discussions concerning the contemplated transaction between EasyPost and Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 102 of the Complaint.

103.    As a senior officer of the company and deal team member, Williams represented to Ruby Has, and its principals, that EasyPost, through the Agreement, was exiting the fulfillment and 3PL business overall and from the Kentucky territory in particular, and would not be in competition with Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 103 of the Complaint.

104.    Williams also represented to Ruby Has, and its principals, that (i) EasyPost was selling and assigning its customer contracts and relationships; and (ii) EasyPost would no longer remain as an operating entity seeking to conduct business with the specific customers and relationships that Ruby Has was acquiring through the Agreement, nor would it target the same industry for the purpose of selling fulfillment and 3PL services and all services described above in the future.

ANSWER:    Defendant denies the allegations contained in Paragraph 104 of the Complaint.

105.    It was implicit in the Agreement that Williams would not set up a competitive replica company to EasyPost in Kentucky right near the old EasyPost (now Ruby Has) facility, providing the same services, with the same people, in the same geography, targeting the same customers, and using the exact same highly-specific pricing and business model as EasyPost did.

ANSWER:    Defendant denies the allegations contained in Paragraph 105 of the Complaint.

106.    These representations were material to Ruby Has in its decision to enter into and pursue the Agreement.

ANSWER:    Defendant denies the allegations contained in Paragraph 106 of the Complaint.

107.    Based on information and belief, at the time Williams made the representations, he knew they were false, based on Williams' own plans to open a competing business against Ruby Has ,using the Easy Post customer database, customer and pricing information and other Easy Post trade secrets and employees.

ANSWER:    Defendant denies the allegations contained in Paragraph 107 of the Complaint.

108.    Williams made these representations intending to induce Ruby Has to rely on them in making the decision to enter into and pursue the Agreement.

ANSWER:    Defendant denies the allegations contained in Paragraph 108 of the Complaint.

109.    Ruby Has relied on these representations, to which Williams was subject and fully aware of, and moved forward with the Agreement and its acquisition of EasyPost's client contracts, operations and other assets and liabilities.

ANSWER:    Defendant denies the allegations contained in Paragraph 109 of the Complaint.

110.    Ruby Has believed, and Williams caused Ruby Has to believe, that the EasyPost business acquired by Ruby Has was insolvent or on the verge of insolvency with several creditors and liabilities that it could not satisfy. Thus, Ruby Has was given assurances by Williams that he was exiting the 3PL business.

ANSWER:    Defendant denies the allegations contained in Paragraph 110 of the Complaint.

111.    Ruby Has reasonably expected, based on the terms of the NDA and the representations that Williams made to Ruby Has, that it was entering into the Kentucky territory should it wish to do so, as well as any and all other territories where EasyPost previously had locations, as the sole owner and possessor of the confidential information and client relationships that were the subject of the Agreement, and in the absence of EasyPost and Williams as a competitor. Williams effectively nullified these agreed-upon expectations by setting up a replica company to the past insolvent one, EasyPost, under different name, eJOOV.

ANSWER:    Defendant denies the allegations contained in Paragraph 111 of the Complaint.

112.    Ruby Has reasonably expected, based on the NDA, the Agreement, and the representations that Williams made to Ruby Has, that Williams would no longer operate a similar business, in the same Kentucky territory, in the same 3PL industry, targeting the same types of clients, offering the same products and services, and working with his former EasyPost colleagues, under the same highly-specific pricing and business model.

ANSWER:    Defendant denies the allegations contained in Paragraph 112 of the Complaint.

113.    At the time the NDA was executed, and the representations were made, however, Williams knew the representations were false.

ANSWER:    Defendant denies the allegations contained in Paragraph 113 of the Complaint.

114.    Upon information and belief, at the time the representations were made, Williams already began to form eJOOV, a company that is in the exact same nature to the division of EasyPost.

28

ANSWER:    Defendant denies the allegations contained in Paragraph 114 of the Complaint.

115.    Further, at the time Williams was making these representations to Ruby Has and was winding down the business of EasyPost to sell to Ruby Has, in the same location, with the same people, in the same industry, targeting the same clients, selling the same products and services, and with the same highly-specific business model, Williams was using the confidential information and client relationships that Ruby Has was acquiring to bring over to eJOOV former EasyPost employees, who were critical to the transition of the EasyPost business and operations to Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 115 of the Complaint.

116.    In addition, Williams used the sensitive and proprietary business information disclosed as governed by the terms of the NDA and that was the subject of the Agreement to create eJOOV and to compete unfairly with Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 116 of the Complaint.

117.    As a result of Williams' fraudulent conduct, Williams wrongfully took client relationships from Ruby Has causing significant damages.

ANSWER:    Defendant denies the allegations contained in Paragraph 117 of the Complaint.

118.    As a result of Williams' fraudulent conduct, in addition to the loss of customer relationships and revenue, Ruby Has has been injured in having to replace the loss of an experienced operations team and in having to rebuild an infrastructure that was acquired as part of the Agreement. The loss of the operational know-how and critical relationships with its customers has also caused Ruby Has to lose significant revenue.

ANSWER:    Defendant denies the allegations contained in Paragraph 118 of the Complaint.

119.    Thus, Williams' fraudulent misrepresentations caused Ruby Has to suffer significant damages, in an amount to be determined at trial, but no less than $10,000,000.00.

ANSWER:    Defendant denies the allegations contained in Paragraph 119 of the Complaint.

## SIXTH CAUSE OF ACTION
### (Breach of Duty of Loyalty against Brown and Lewis)

120.    Ruby Has repeats and realleges the allegations contained in paragraphs 1 through 119 with the same force and effect as if fully set forth herein.

ANSWER:    Defendant incorporates by reference its answers in each paragraph above as if specifically stated herein.

121.    Brown and Lewis were hired by Ruby Has in April 2020 as independent contractors to provide certain consulting services.

ANSWER:    Defendant admits that Individual Defendants Brown and Lewis were hired as independent contractors of Ruby Has in April 2020.  Defendant denies the remaining allegations contained in Paragraph 121 of the Complaint.

122.    Brown handled EasyPost's closure and transition of its warehouses from California, Pennsylvania, and Utah to Kentucky. In that role, Brown had access to all customer accounts and information, including but not limited to, prior revenue, item information, and sales that were acquired by Ruby Has.

ANSWER:    Defendant admits that Individual Defendant Brown assisted in the closure and transition of Easy Post's warehouses from California, Pennsylvania and Utah to Kentucky. Defendant denies the remaining allegations contained in Paragraph 122 of the Complaint.

123.    Lewis was charged by Ruby Has with overseeing special projects and sales. Lewis had access to all customer accounts and information, including but not limited to, prior revenue, item information, and sales that were acquired by Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 123 of the Complaint.

124.    As independent contractors, Brown and Lewis owed a duty to Ruby Has not to use their position against Ruby Has' interests. Ruby Has placed special faith, trust, reliance and confidence in Brown and Lewis in their roles at Ruby Has to guide the Ruby Has team to a successful transition of EasyPost's customers with the goal of becoming the preeminent fulfillment specialist and 3PL provider.

ANSWER:    Defendant denies the allegations contained in Paragraph 124 of the Complaint.

125.    Notwithstanding the duties that Brown and Lewis owed to Ruby Has, Brown and Lewis surreptitiously coordinated with Williams to form and operate eJOOV while still working with Ruby Has and receiving compensation from Ruby Has for their consulting services.

ANSWER:    Defendant denies the allegations contained in Paragraph 125 of the Complaint.

126.    However, Lewis and Brown's coordinated their departure from Ruby Has in May 2020 to immediately begin employment at eJOOV, which opened its own operations directly across the street from Ruby Has' warehouse in Kentucky. In doing so, Lewis and Brown formed and/or joined eJOOV in order to directly compete with Ruby Has in violation of their respective obligations to act for the benefit of Ruby Has regarding their duties to exercise judgment and expertise in the interests of Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 126 of the Complaint.

31

127.    Specifically, Brown and Lewis breached their duty of loyalty to Ruby Has by failing to give full disclosure and to conduct themselves with undivided loyalty to Ruby Has' interests to Ruby Has.

ANSWER:    Defendant denies the allegations contained in Paragraph 127 of the Complaint.

128.    As a result, Ruby Has is entitled to damages from Brown and Lewis, including disgorgement of all wages and other compensation paid to Brown and Lewis during the time of their disloyalty.

ANSWER:    Defendant denies the allegations contained in Paragraph 128 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Defendant expressly denies any allegations contained in the Complaint not specifically admitted herein.

2.    Defendant states that the Complaint fails to state a claim upon which relief can be granted.

3.    Defendant states that Plaintiff's claims are barred by their own bad faith and/or unclean hands.

4.    Plaintiff does not own or possess a protectable trade secret.

5.    Defendant states that it has not misappropriated any trade secret claimed to be owned or possessed by Plaintiff.

6.    Defendant states that it has neither used nor benefited from any information that is claimed to be the subject to trade secret protection owned or possessed by Plaintiff.

7.    Defendant states that parties other than Plaintiff independently developed the information that Plaintiff claims to be subject to trade secret protection which it owns or possesses.

8.    Plaintiff fails to identify the existence of any trade secret or other protectable interest under Kentucky common law and/or the Kentucky Uniform Trade Secrets Act ("KUTSA"), Ky. Rev. Stat. Ann. § 365.880, *et seq*.

9.    To the extent that Plaintiff has identified the existence of any trade secret or other protectable interest under the KUTSA, which is denied, Plaintiff's purported cause of action arising under Kentucky common law are preempted and bared, in whole or in part, by the KUTSA.

10.    The agreements referenced in Plaintiff's Complaint are null and void for insufficient consideration and/or lack of consideration.

11.    The non-competition, non-disclosure and/or non-solicitation provisions of the agreements referenced in Plaintiff's Complaint are unreasonable as a matter of law in terms of both duration and geographic scope.

12.    Plaintiff's demand for injunctive relief fails as a matter of law and/or fact because Plaintiff cannot show: (1) a likelihood of success on the merits; (2) immediate and irreparable injury, loss, damage or harm; (3) the public interest would be served by issuance of a preliminary or permanent injunction; or (4) the benefit of a preliminary or permanent injunction will outweigh the substantial harm that a preliminary or permanent injunction would cause to Defendants.

13.    Defendant states that the Plaintiff has not suffered cognizable injury or damage under the allegations set forth in its Complaint. Defendant denies that Plaintiff has suffered the harm or damages as described in the Complaint. However, if it has suffered such harm or damages, they were caused in whole or in part by the conduct of the Plaintiff or of third parties, and therefore, any award against Defendant should be reduced by virtue of contributory negligence, comparative negligence, contribution, apportionment, or indemnity.

14.    Defendant states that the Plaintiff's alleged injuries were the result of an intervening and superseding cause or causes and are not the substantial result of the acts or omissions of Defendant.

15.     Defendant states that Plaintiff has a duty to mitigate damages whenever possible. Any judgment received by Plaintiff (the entitlement to which Defendant specifically denies) must be reduced in proportion to Plaintiff's failure to mitigate damages. Plaintiff's damages claims, therefore, are barred in whole or in part by its failure to mitigate damages.

16.     Defendant states that Plaintiff expressly or impliedly authorized some or all of the actions of Defendant about which it now complains.

17.     Defendant states that the claims of Plaintiff are barred, in whole or in part, by waiver, laches, acquiescence, estoppel, or the applicable statute of limitations.

18.     Defendant states that claims of Plaintiff are barred as Plaintiff has failed to name an indispensable party to this Action.

19.     Defendant states that they plead any matter which could be asserted as an affirmative defense or avoidance, and reserve the right to amend this Answer in the event that discovery reveals additional defenses.

## PRAYER FOR RELIEF

WHEREFORE, Defendant eJOOV, Inc., respectfully requests the following relief against Plaintiff Ruby Has, LLC:

A.     That Plaintiff's Complaint be dismissed with prejudice;

B.     That Defendant be awarded its costs and disbursements, including reasonable attorneys' fees of this action; and,

C.     That Defendant be awarded all other and further relief as the Court may deem just and equitable.

Respectfully submitted,


 *s/ Dennis D. Murrell*_____
Dennis D. Murrell
Jennifer M. Barbour
Samantha R. Wright
**MIDDLETON REUTLINGER**
401 S. Fourth Street, Suite 2600
Louisville, KY  40202
Phone: (502) 584-1135
dmurrell@middletonlaw.com
jbarbour@middletonlaw.com
swright@middletonlaw.com
*Counsel for Defendant eJOOV, Inc.*


### CERTIFICATE OF SERVICE

The undersigned certifies that on this the __*21ˢᵗ*__ day of January, 2021 the foregoing was filed according to the rules of Electronic Court Filing (ECF) in effect for the Western District of Kentucky – Louisville Division, which ECF system will provide a copy of same to all persons registered to receive service in this case, including but not limited to:

Shannon Antle Hamilton
**STITES & HARBISON, PLLC**
400 W. Market Street, Suite 1800
Louisville, KY  40202
shamilton@stites.com


 -and-


Scott M. Kessler
Jamie B. Shyman
**AKERMAN, LLP**
520 Madison Avenue, 20ᵗʰ Floor
New York, NY 10022
scott.kessler@akerman.com
jamie.shyman@akerman.com


*Counsel for Plaintiff*

Paul Hershberg
**PAUL HERSHBERG LAW, PLLC**
1161 East Broadway
Louisville, Kentucky 40204
Phone: (502) 736-7502
paul@hershberglaw.com
*Counsel for Eric Williams,*
*Tim Brown, Michael Lewis*
*and Stephanie Flischel*


 *s/ Dennis D. Murrell*_____
*Counsel for Defendant eJOOV, Inc.*